UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL N.,

                              **Plaintiff,**

v.

                                                                                      20-CV-694-HKS

COMMISSIONER OF SOCIAL SECURITY,

                              **Defendant.**

_____

## DECISION AND ORDER

Plaintiff, David O., brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c). Dkt. No. 9. Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 5, 6. For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 5) is GRANTED, and Defendant's Motion for Judgment on the Pleadings (Dkt. No. 6) is DENIED.

## BACKGROUND

On April 21, 2016, Plaintiff protectively filed an application for DIB with the Social Security Administration ("SSA") alleging disability beginning on February 18, 2015, due to: major depressive disorder, generalized anxiety disorder, and cognitive

1

impairment due to psychiatric medication.  Tr.[1] 162-186.  On July 12, 2016, Plaintiff's claims were denied by the SSA at the initial level and he requested review.  Tr. 74-92, 95-96.  On October 31, 2018, Plaintiff appeared with his attorney and testified, along with a vocational expert ("VE") before Administrative Law Judge, Anthony Dziepak ("the ALJ").  Tr. 28-73.  On January 22, 2019, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act.  Tr. 9-27.  Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on April 10, 2020.  Tr. 1-6.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

## **LEGAL STANDARD**

### I.  **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

---

[1] References to "Tr." are to the administrative record in this matter.  Dkt. No. 5.

marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20

3

C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. See 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); see also 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above. As an initial matter, the ALJ concluded Plaintiff met the insured status requirements of the Act through December 31, 2020. Tr. 14. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 18, 2015, the alleged onset date. Tr. 14. At step two, the ALJ found Plaintiff has the following severe impairments: affective disorder and anxiety-related disorder.

Tr. 14-15.  Also at step two, the ALJ concluded that Plaintiff's vitamin deficiency is a non-severe impairment as there are no more than slight functional limitations associated with this impairment.  Tr. 15.  At step three, the ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal any listings impairment.  Tr. 15-17.  The ALJ considered Listing 12.04 (depressive, bipolar, and related disorders) and Listing 12.06 (anxiety and obsessive-compulsive disorders) of 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 15.

Next, the ALJ determined Plaintiff retained the RFC to perform a full range of work at all exertional levels but with non-exertional limitations. Tr. 17-22.  Specifically, the ALJ concluded Plaintiff can perform simple work tasks in a non-assembly line type production-paced setting; can make simple work-related decisions; and adapt to simple changes in a routine work setting involving no interaction with the public.  Tr. 17.  The ALJ also found Plaintiff could have only occasional interaction with supervisors and coworkers and could not perform team/tandem collaborative work*.  Id.*

At step four, the ALJ concluded Plaintiff is unable to perform his past relevant work as a programmer analyst.  Tr. 22.  At step five, the ALJ considered Plaintiff's age (43 on alleged disability date), education, work experience, RFC, and relied on the VE's testimony in concluding that there are jobs existing in significant numbers in the national economy that Plaintiff can perform.  *Id.*  The ALJ identified jobs that Plaintiff could perform including:  auto detailer, merchandise marker, and document

preparer. Tr. 23. Accordingly, the ALJ determined that Plaintiff was not disabled under the Act from February 18, 2015 through January 22, 2019. Tr. 23.

## II.     Analysis

Plaintiff argues the Commissioner's decision should be remanded for further administrative proceedings because the ALJ erred in evaluating the medical opinion evidence in support of the RFC. Dkt. No. 5 at 14. Specifically, Plaintiff argues that the ALJ failed to discuss medical opinion evidence from Kevin Duffy, PsyD ("Dr. Duffy") at step three of the sequential disability analysis and omitted medical opinion evidence from Andrew Reichert, MD ("Dr. Reichert") in assessing Plaintiff's RFC. *Id.* The Commissioner contends the ALJ's step three finding is supported by substantial evidence and that the ALJ properly considered medical opinion evidence from Dr. Reichert in assessing the RFC. Dkt. No. 6 at 6,10.

### A. The ALJ's Step Three Finding is Supported by Substantial Evidence

At step three, the ALJ considers the medical severity of the claimant's impairment(s) in determining whether the impairment(s) meets or equals one of the listings in C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ evaluated Listings 12.04 and 12.06, which consist of three paragraphs, designated A, B, and C. Plaintiff's mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C. 20 C.F.R. § Pt. 404, Subpt. P, App.1 § 12.00(2). Paragraph A requires "medical

6

documentation" of the relevant mental impairment (for listing 12.04, a depressive or bipolar disorder; for Listing 12.06, an anxiety or obsessive-compulsive disorder). 20 C.F.R. Pt. 404 Subpt. P, App'x 1, §§ 12.04(A), 12.06(A).  In this case, there is no question that the paragraph A criteria are satisfied for both Listing 12.04 and Listing 12.06.

Paragraph B requires the claimant to show "[e]xtreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

1. The ability to understand, remember, or apply information;
2. The ability to interact with others;
3. The ability to concentrate, persist, or maintain pace; and
4. The ability to adapt or manage oneself.

20 C.F.R. Pt. 404 Subpt. P, App'x 1, §§ 12.04(B), 12.06(B).  Here, the ALJ found Plaintiff addressed each of the paragraph B criteria and found Plaintiff demonstrated "moderate limitations" in each of the four areas of mental functioning identified above. Tr. 15-16.   In support of his reasoning, the ALJ incorporated references to Plaintiff's medical history (therapy notes and observations from his consultative psychiatric examination), work history, and educational history.  Tr. 15-16.

Lastly, the ALJ concluded that the evidence failed to establish the presence of paragraph C criteria.  Tr. 15-16.

Plaintiff argues the ALJ erred in concluding that he demonstrated only "moderate limitations" in each of the paragraph B areas of mental functioning because the ALJ failed to consider Dr. Duffy's incongruous medical opinion at step three. Dkt.

No. 5 at 19.  Specifically, Plaintiff argues the ALJ failed to discuss Dr. Duffy's opinion that Plaintiff may have some "moderate to marked" difficulties maintaining attention and concentration; "marked" difficulties performing complex tasks independently; and "marked" difficulties in dealing with stress appropriately.  Dkt. No. 5 at 19, Tr. 468.

In cases where a disability claim is premised upon a listed impairment, the ALJ should set forth a clear rationale in support of the decision to find or not to find a listed impairment.  *Berry v. Schweiker*, 675 F. 2d 464, 468-69 (2d Cir. 1982) (per curiam) (affirming denial of benefits where portions of the ALJ's decision indicate his conclusion was supported by substantial evidence).  An ALJ's failure to include a specific rationale for rejecting a Listing at step three may require remand if the determination was not supported by substantial evidence.  *Id.* at 469.  In *Berry*, the Second Circuit Court of Appeals upheld an ALJ's determination that the claimant did not meet Listing 1.04, even though the ALJ provided no explanation for his conclusion.  675 F.2d at 469.  The Second Circuit explained:

> In spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.  Cases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ.  In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision.  Thus, in future cases in which the disability claim is premised upon one or more listed impairments of Appendix 1, the Secretary should set forth a sufficient rationale in support of his decision to find or to not find a listed impairment.

8

*Id.* (citations omitted).

Unlike the ALJ in *Berry* who provided no explanation for his conclusion that the claimant did not meet the listing, the ALJ in this matter addressed each of the paragraph B mental functioning criteria in support of his conclusion that the Plaintiff did not meet the listing.

In understanding, remembering, or applying information, the ALJ explained that the record, although void of psychological testing, confirms that Plaintiff completed high school and college without special education services, earning two Bachelor's Degrees and a Master's Degree.  Tr. 15.  The ALJ did note Plaintiff's difficulty in school, attributable to slow information processing and issues with paying attention.  *Id.*  The ALJ also referenced Plaintiff's attention and concentration appeared grossly intact at the consultative examination where he was able to count, perform simple calculations, and the serial threes task.  *Id.*  The ALJ also observed Plaintiff's work history including highly skilled positions and some work during the relevant period.  *Id.*

In interacting with others, the ALJ noted that Plaintiff was cooperative and presented with adequate social skills at his consultative examination.  Tr. 16.  His personal hygiene and grooming were good and he made appropriate eye contact.  *Id.*  The ALJ observed that although Plaintiff reported he does not socialize much outside of

the home, his therapy notes document his attendance at a music fest, camping, going to the gym, job interviews, and performing volunteer work once a month with a friend. *Id.*

With regard to concentrating, persisting or maintaining pace, again the ALJ noted Plaintiff's completion of cognitive exercises during his consultative examination. Tr. 16. The ALJ also noted that Plaintiff's treatment notes included complaints of fatigue, lack of motivation, brain fog, overthinking, and inability to make important decisions. *Id.*

As for adapting or managing oneself, the ALJ observed that Plaintiff has no difficulty managing appropriate hygiene, attire, conflict or daily situations. *Id.* Furthermore, the ALJ noted that the record does not contain any psychiatric hospitalizations or emergency room visits. *Id.* The ALJ also noted Plaintiff's generally conservative course of psychiatric care, despite periods of social stressors, Plaintiff maintained appointments, complied with treatment, and retained the ability to perform a wide range of daily tasks. *Id.* Lastly, the ALJ noted that aside from Plaintiff's subjective endorsement of symptoms attributable to this area of mental functioning, the record does not include any evidence of decompensation, self-harm behaviors, or suicidal ideation to support a finding of more than a moderate limitation. *Id.*

Although the ALJ did not specifically cite medical opinion evidence from Dr. Duffy to support his step three determination at step three, the ALJ did address the medical opinion evidence from Dr. Duffy in the decision in support of his RFC analysis,

which supported his step three determination.  The ALJ explained that he accorded "great weight" to the doctor's opinion, in support of the RFC.

The ALJ acknowledged Dr. Duffy's opinion that Plaintiff would have marked difficulties learning new tasks, performing complex tasks independently, and in dealing appropriately with stress.  *Id.*  Here, the ALJ explained that the RFC appropriately restricts Plaintiff from interacting with the public, permits only occasional interactions with supervisors and coworkers, proscribes performance of team or tandem tasks, and permits performance of simple routine tasks at a non-production rate pace.  *Id.*  The ALJ further explained that these limitations addressed both Plaintiff's interpersonal relationship difficulties and low threshold for stress where the RFC limits task complexity, production pace, and restricts collaborative work with others.  *Id.*  Lastly, this Court notes that although the ALJ did not explicitly address the doctor's opinion that Plaintiff would have moderate to marked difficulties with maintaining attention and concentration, that opinion is not incongruous to the ALJ's finding that Plaintiff demonstrated moderate limitations with regard to concentrating, persisting, or maintaining pace.  Tr. 21.

Accordingly, this Court finds Plaintiff has not met his burden of establishing that his medical impairments met or medically equaled the requirements of a listed impairment and his challenge to the ALJ's step three analysis fails.  Overall, the evidence in the record did not establish that Plaintiff met the requirements of Listing

12.04 and 12.06, and the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment is supported by the record.

### B. The ALJ's Evaluation of Dr. Reichert's Opinion is Flawed.

Plaintiff argues that the ALJ failed to discuss or evaluate medical opinion evidence from Dr. Reichert, Plaintiff's treating psychiatrist, in support of the RFC determination.  Dkt. No. 5 at 14.  The Commissioner contends that the ALJ is not required to discuss or evaluate the opinion evidence from Dr. Reichert because the doctor's opinions are on the ultimate issue of disability, which is an issue reserved to the Commissioner.  Dkt. No. 6 at 10.  This Court agrees with Plaintiff for the reasons that follow.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. Appx. 53, 56 (2d Cir. 2013).  Under Second Circuit precedent and the applicable regulations, an ALJ must follow a two-step procedure to determine the appropriate weight to assign to the opinion of a treating physician.  *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  In assessing the medical opinion evidence in the record, first the ALJ will afford the opinion of a treating provider controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  *Id.*  When assigning less than "controlling weight" to a treating physician's opinion under the treating physician rule, the ALJ must explicitly consider the following

factors: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95-96. At both steps, "the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion." *Id.* at 96.

A medical source's statement that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will find that claimant disabled, because it is the Commissioner's responsibility to determine whether a claimant meets the statutory definition of disability. *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 809-10 (W.D.N.Y. 2016) (citing 20 C.F.R. § 404.1527(d)(1)). However, the ALJ must still address the treating physician's opinion on an issue reserved to the Commissioner, explaining what weight was accorded to the opinion and providing good reasons for refusing to credit the opinion. *See Newbury v. Astrue*, 321 Fed. Appx. 16, 18 (2d Cir. 2009) (finding the district court erred when it held that, because the treating physician's opinion went to issues reserved to the Commissioner, the claimant was not entitled to an explanation of the reasons why the ALJ refused to credit the opinion).

On March 17, 2017, Dr. Reichert authored a letter on behalf of Plaintiff in support of his claim for disability. Tr. 661.

> "Mr. Daniel N. has been under our care since 1/31/2015 for management of treatment refractory and recalcitrant major depression. He has been completely debilitated by this condition and has been unable to work (completely and totally disabled) since February of 2015. He remains unresponsive to a plethora of attempted interventions including

13

>  extraordinary measures, unfortunately without success.  He remains totally and probably permanently disabled."

Tr. 661.  Dr. Reichert also noted in multiple treatment records from 2015 through 2018, that Plaintiff was unable to work in a gainful capacity due to the severity of his debilitating depression.  Tr. 457, 461, 498, 529.

In his decision, the ALJ omitted any reference to the March 2017 letter authored by Dr. Reichert or the doctor's treatment notes regarding Plaintiff's inability to work due to his debilitating depression.  Instead, the ALJ explained that he accorded little weight to the multiple GAF scores that Dr. Reichert assigned for Plaintiff ranging from 41 to 55, from June 2016 through September 2018, and 46 to 53 from May 2016.  Tr. 22.  Although the ALJ acknowledged that the scores suggested "severe to moderate symptoms," the ALJ observed that GAF scores individually are reflective of vague snapshot in time assessments of overall functioning and/or general symptoms.  *Id.*  The ALJ then summarily concluded the GAF scores reflect management of chronic symptoms with improvement over time.  *Id.*

The ALJ's reasoning for discounting Dr. Reichert focuses entirely on the ALJ's perceived inaccuracy of the GAF scores that treating psychiatrist assessed for Plaintiff.  The ALJ did not provide any other explanation for why Dr. Reichert's opinion was not "well-supported by medically acceptable … techniques" or "inconsistent with other substantial evidence," 20 C.F.R. § 404.1527 (c)(2), nor did he explicitly consider

14

any of the factors for determining the weight given to a non-controlling opinion, *see id*. § 404.1527 (c)(2)(i), (2)(ii), (3)-(6).

Lastly, the ALJ noted that Dr. Reichert's medication notes in July 2018 indicated Plaintiff was looking for work, reported feeling more functional, and better engaged when with others.  Tr. 22.  Also, the ALJ observed that the record confirms periods of plateauing followed by symptom exacerbations that inevitably return.  Tr. 20.  However, "[c]ycles of improvement and debilitating symptoms of mental illness are a common occurrence and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  *Estrella*, 925 F.3d at 97.

The Second Circuit Court of Appeals has stated that it will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and [it] will continue remanding when [it] encounters opinions from ALJ[s] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."  *Halloran v. Barnhart*, 362 F.3d 28,33 (2d Cir. 2004); *see also Greek v. Colvin*, 802 F.3d 370, 375-77 (remanding where "ALJ did not provide any [valid] explanation for why [a treating physician's opinion was not well-supported").  This Court finds that the ALJ failed to provide "good reasons" for not giving Dr. Reichert's opinion controlling weight and therefore, remand is required.

15

## CONCLUSION

For these reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 5) is GRANTED and the Commissioner's Motion for Judgment on the Pleadings (Dkt. No. 6) is DENIED.  This case is remanded for the limited purpose of having the ALJ explain the weight given to Dr. Reichert's opinion.  The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:     Buffalo, New York
           August 23, 2021

                                         *s/ H. Kenneth Schroeder, Jr.*
                                         **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**